UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOHN WILSON, ) | |
| ) | |
| Petitioner, ) | |
| vs. ) | Case No. 2:12-cv-0065-JMS-MJD |
| ) | |
| MR. LOCKETT, ) | |
| ) | |
| Respondent. ) | |

**Entry Denying Petition for Writ of Habeas Corpus
and Directing Entry of Final Judgment**

Petitioner John Wilson has been incarcerated in this District at the United States Penitentiary at Terre Haute, Indiana since December 12, 2011. Wilson filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241 on January 19, 2012, in the District Court for the District of Columbia. The action was transferred to this Court on March 14, 2012.

The Court has considered the petition for a writ of habeas corpus, the respondent's response and petitioner's reply, and now finds that the relief sought by the petitioner must be **denied** and that the action must be dismissed.

*Background*

Wilson was convicted of second degree murder. He was sentenced on October 1, 1999, by the Superior Court of the District of Columbia to a term of imprisonment of twenty years to life. Wilson was committed to the custody of the Bureau of Prisons ("BOP") on June 4, 2002. He has a projected parole hearing date in June of 2018. His parole eligibility date is March 22, 2019.

Under the National Capital Revitalization and Self-Government Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 ("Revitalization Act") (effective August 5, 1998), *codified as amended at* D.C.Code § 24-131 (2001), exclusive jurisdiction of parole matters over D.C. imprisoned felons was transferred from the Board of Parole of the District of Columbia to the United States Parole Commission ("Commission"). *See Franklin v. District of Columbia,* 163 F.3d 625, 632 (D.C. Cir. 1998) (Congress transferred the authority of the D.C. Board of Parole to the U.S. Commission pursuant to the Revitalization Act). Under the Revitalization Act, the Commission was directed to conduct parole hearings for D.C. Code offenders "pursuant to the parole laws and regulations of the District of Columbia." *Wilson v. Fullwood,* 772 F.Supp.2d 246, 267-68 (D. D.C. 2011); see 28 C.F.R. §§ 2.80 (parole guidelines for D.C. Code offenders), 2.2 (U.S. Code parole policy guidelines). The Revitalization Act gave the Commission the same authority previously granted to the D.C. Board of Parole to "amend and supplement" the D.C. parole rules, D.C.Code §24-131. *See* 28 C.F.R. §2.80. The Commission has used this authority accordingly.

*Discussion*

A § 2241 petition "applies to challenges to the fact or duration of confinement." *Hill v. Werlinger*, 695 F.3d 644, 645 (7th Cir. 2012). Section 2241 challenges are usually limited to "the execution, not imposition, of a sentence." *Kramer v. Olson,* 347 F.3d 214, 217 (7th Cir. 2003).

The BOP is vested with discretion to determine the custody classification, security level, and location of federal inmates. *See* 18 U.S.C. 3621. That discretion is exercised in accordance with the BOP Program Statement (PS) *Inmate Security Designation and Custody Classification Manual,* No. 5100.08 ("PS 5100.08"). *See Perez v. Lappin*, 672 F.Supp.2d 35, 40 (D. D.C. 2009). "The classification of inmates is necessary to place each inmate in the most appropriate

security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society." PS 5100.08 at p. 1. "The Bureau's classification, designation and redesignation procedures are consistent with the statutory authority contained in 18 U.S.C. § 3621(b)." *Id.* "A Public Safety Factor ("PSF") is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." *Id.* at Ch.5, p.7.

In his § 2241 petition, Wilson asserts several claims. First, he contends that the application of the PSFs against him by the BOP violates the *Ex Post Facto* Clause of the Constitution. Second, he argues that the PSFs assigned to him by the Commission and good time credits allegedly denied him violated his rights to due process. Third, he argues that D.C. Code Offenders receive two PSF scores while federal code offenders only receive one PSF score, in violation of the Equal Protection Clause. Finally, he asserts that the Revitalization Act is unconstitutional.

The respondent acknowledges that Wilson challenges the constitutionality of the Revitalization Act, the BOP's authority to determine and apply a PSF score to Wilson, and whether his score was appropriate. The respondent has responded to the due process and *ex post facto* claims even though it also argues that § 2241 is not an appropriate remedy for Wilson's claims.

*2241 Remedy*

Although the respondent raises this defense last, the Court must begin with the question of whether § 2241 is the proper vehicle for this case. The respondent argues that Wilson is not

challenging the fact or duration of his confinement, but is challenging his PSF assignment based on his being a D.C. offender, and therefore § 2241 is not the proper means to bring his claim.

Habeas petitions are appropriate when success would "spell speedier release." *Wilkinson v. Dotson,* 544 U.S. 74, 82 (2005). A "quantum change in the level of custody" must be addressed by habeas corpus, while a quest for "a different program or location or environment" must be raised in a civil rights claim. *Glaus v. Anderson,* 408 F.3d 382, 388 (7th Cir. 2005) (internal quotation omitted). The respondent contends that the PSFs applied to Wilson do not affect the fact or duration of his confinement. *See Pinkney v. U.S. Dept. of Justice,* 1:07-cv-106, 2009 WL 277551 (N.D.W.Va. Feb. 5, 2009) (claim that the BOP policy assigning PSFs discriminated against D.C. inmates was construed as a challenge to a condition of confinement and petitioner could not obtain relief through § 2241 petition).

Wilson asserts in his reply that he *is* challenging the length of his detention and the credit due him as a D.C. Code offender housed in a federal prison, in addition to challenging the constitutionality of the Revitalization Act. The relief he seeks is "the proper credit due me." Reply at p.2. He also asserts that the relief he seeks is to be classified without the use of PSFs and thereby provided the opportunity to earn additional good time credits. Petitioner's Memorandum at p. 7. He argues that he should be treated as a D.C. Code offender under policies in place prior to the enactment of the Revitalization Act, not as a federal code offender. He contends that as a D.C. Code offender, he would have received more good time credit than he is able to earn under the standard 87% granted by the BOP.

The Court finds that it is at least possible that Wilson's suit would affect the duration of his confinement if he were to succeed on his claims. If it were determined that the Revitalization Act was unconstitutional or his classification was not properly determined, the amount of time

Wilson must serve could be shortened. *See Lewis v. United States Parole Commission,* 132 Fed.Appx. 659, 660 (7th Cir. May 16, 2005) (*dicta,* miscalculation of petitioner's parole date is a claim properly brought under § 2241 as a challenge to the execution of the sentence); *Docken v. Chase,* 393 F.3d 1024, 1031 (9th Cir. 2004) (challenge to the frequency of parole review could potentially affect the duration of confinement and is properly brought under habeas); *Washington v. Reilly,* 2:09-cv-74, 2009 WL 3400895, *4 (N.D.W.Va. 2009) (reviewing constitutionality of Revitalization Act in § 2241 case); *Scott-El v. United States Parole Commission,* 4:04-cv-491, 2006 WL 2671399, *4 (M.D. Pa. Sept. 18, 2006) (considering claim that differences between U.S. Parole standards and former D.C. regulations violated equal protection rights in § 2241 case); *Moore v. Bledsoe,* 7:04-cv-0595, 2005 WL 2709279, *3-4 (W.D.Va. May 27, 2005) (§ 2241 case holding Revitalization Act did not violate *Ex Post Facto* Clause). Accordingly, Wilson's claims shall be considered under § 2241.

*Constitutionality of the Revitalization Act - Ex Post Facto* Clause

Wilson argues that the Commission's PSF classification tool as applied to him violates the *Ex Post Facto* Clause of the Constitution. The *Ex Post Facto* Clause bars penal statutes which, by retroactive application, increase punishment for a crime that has already been committed. *See Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990).

Wilson contends that the D.C. Code is substantially more generous to D.C. offenders than the applicable federal standards in the calculation of parole eligibility dates. The respondent responds that there is no *ex post facto* violation as the result of the Commission applying its regulations to parole decisions concerning D.C. offenders because the D. C. Board of Parole had unbridled discretion, citing *Wilson v. Fullwood,* 772 F.Supp.2d 246, 267-68 (D. D.C. 2011). A petitioner "may invoke an *ex post facto* protection only on the basis of the parole regime that was

in effect at the time he committed his offense." *Id.* at 266-67 (internal quotation omitted). In *Wilson,* the D.C. court reasoned that under pre-1987 regulations, the D.C. Parole Board was given "totally unfettered" discretion. *Id.* at 267. The *Wilson* decision stated that "the pre–1987 Regulations gave the Board, and now the Commission, so much discretion that the Court simply cannot compare, based on Plaintiff's allegations, how the Commission might have evaluated parole under those regulations with how the Commission did evaluate parole under the modern 2000 Guidelines." *Id.* Even though Wilson was not convicted before 1987, the same rationale applies in this case. "[T]he Revitalization Act did not change the basic structure of D.C. parole law and left the Commission with the same degree of discretion enjoyed by the Board to apply and revise the D.C. parole regulations and guidelines." *Smith v. LaManna,* 6:06-cv-1431-CMC-WMC, 2007 WL 904282, *6 (D.S.C. Mar. 22, 2007) (Revitalization Act is not an *ex post facto* law because it only transferred paroling authority from one agency to another, complete with authority to amend, and because the Commission's guidelines did not produce results harsher than the D. C. Board had the power to order under its 1987 guidelines).

To prevail on his *ex post facto* claim, Wilson "must do more than assert that the Commission's guidelines created some speculative, attenuated risk of a longer prison term." *Gooding v. Marberry,* 341 Fed.Appx. 173, 175 (7th Cir. July 20, 2009) (internal quotation omitted) (rejecting *ex post facto* challenge because the factors considered by the Commission "are very similar to those considered under the D.C. Board of Parole's guidelines" and petitioner had not demonstrated that the Commission's guidelines created a significant risk of increased punishment); s*ee also Thomas v. Marberry,* 318 Fed.Appx. 427, 428-29 (7th Cir. Nov. 20, 2008) (*ex post facto* argument failed because factors considered by Commission would have been considered under the D.C. guidelines and so there was no significant risk of increased

punishment); *Glascoe v. Bezy,* 421 F.3d 543, 547-48 (7th Cir. 2005) (petitioner could not show application of 1999 parole guidelines as applied to his own sentence created a significant risk of increased punishment); *Taylor v. Reilly,* 685 F.3d 1110, 1115 (D.C. Cir. 2012) (the Commission's regulations do not on their face show a significant risk of longer incarceration over the D.C. Code for every prisoner to whom they may be applied); *Scott-El v. United States Parole Commission,* 4:04-cv-491, 2006 WL 2671399, *4 (M.D. Pa. Sept. 18, 2006)(D. C. Code offender could make no showing that he was materially disadvantaged by Commission's parole guidelines so no *ex post facto* violation); *Anderson-El v. U.S. Parole Commission,* 05-cv-2697, 2006 WL 2604723, (S.D.N.Y. Sept. 11, 2006) (concluding that the now-repealed D.C. guidelines and the Commission's guidelines did not result in in an unconstitutional increase in the time the petitioner was likely to spend in custody under his 1990 sentence); *Simmons v. Shearin,* 295 F.Supp.2d 599, 603-604 (D. Md. 2003)(citing numerous courts that have concluded that the Commission guidelines are not even "laws" within the meaning of the *Ex Post Facto* Clause because of the broad discretion accorded to the Commission).

Wilson's *ex post facto* claim fails because he has not shown that the Commission's guidelines were harsher on their face than the D.C. guidelines in effect when he committed his offense, or that the Commission's guidelines as applied to him created a significant risk of increased punishment. *See Garner v. Jones,* 529 U.S. 244, 255 (2000). Speculation is not good enough. The only specific allegation Wilson advances is that D.C. Code offenders receive two PSF scores while federal offenders receive only one. He cites no authority for this assertion nor does he show that, if true, this circumstance creates more severe punishment. *Ex post facto* claims similar to Wilson's have been rejected by a number of courts and must be rejected here for the same reasons. Wilson's *ex post facto* claim is without merit.

*Due Process Claim*

Wilson asserts that the D.C. laws were substantially more generous than federal provisions in calculating parole eligibility dates. Petitioner's Memorandum at p. 6. He also alleges that as a D.C. Code offender, his due process rights were violated when, upon his transfer to the federal system, he lost his right to continue earning District of Columbia good time credits. *Id.* at p. 6. He argues that because the PSF system is applied to D.C. Code offenders arbitrarily and capriciously, he was reclassified without due process, and that the PSFs assigned to him are hindering his ability to earn more good time credits. *Id.* at p. 7.

To succeed on a due process claim, Wilson must show that he has a protected liberty interest at stake. *Domka v. Portage County, Wis.,* 523 F.3d 776, 779 (7th Cir. 2008). The respondent correctly cites *Thompson v. Veach,* 501 F.3d 832, 836 (7th Cir. 2007) for the proposition that "the District of Columbia's parole statute does not contain mandatory language creating an expectancy of release that rises to the level of a constitutionally protected liberty interest." *Id.* "Indeed, the law is well established that the D.C. statutory scheme does not create any liberty interest in parole." *Id. See also Thomas,* 318 Fed.Appx. at 428 (petitioner's "due process argument fails because the District of Columbia's parole statute is discretionary and does not create a liberty interest in parole.") (internal citations omitted). "With no liberty interest at stake, there can be no due process violation." *Id.*

To the extent Wilson argues that his due process rights to parole eligibility were violated by virtue of his transfer to the BOP, he cannot prevail on this claim. "Court have consistently held that the D.C. parole statute, which applies to D.C. Code offenders even after they are transferred to the jurisdiction of the Commission, does not create a liberty interest in parole." *Anderson-El v. U.S. Parole Commission,* 05-cv-2697, 2006 WL 2604723, *9 (S.D.N.Y. Sept. 11,

2006). "[N]either the old D.C. Board of Parole rules nor the Revitalization Act created the sort of mandatory entitlement that gives rise to a liberty interest protected by the Due Process Clause." *Id.* (internal quotation omitted). *See also Simmons v. Shearin,* 295 F.Supp.2d 599, 602 (D. Md. Dec. 23, 2003) ("The D.C. parole statute and regulations, applicable to D.C. offenders even after they are transferred to the jurisdiction of the USPC, do not create any liberty interest in parole.").

The loss of a state-created liberty interest is protected by due process. "D.C. prison regulations may give rise to constitutionally protected liberty interests." *Hatch v. District of Columbia,* 184 F.3d 846, 850 (D.C. Cir. 1999). As noted, Wilson also argues that as a D.C. Code offender, he "lost the right to continue earning District [of Columbia] good time credits" when he was transferred to a federal facility. Petitioner's Memorandum at p.6. He cites to D.C. Code Ann. 24-428 to 24-434 (repealed) as the source of his liberty interest. More specifically, Wilson contends that the Commission's PSF classification process denied him "the chance to earn additional time credits in a medium prison instead of a penitentiary where there is less educational opportunities." Petitioner's Memorandum at p. 7. He contends that the PSF system is "used arbitrarily and capriciously" against D.C. Code old law offenders, denying them due process. *Id.*

The PSFs of Sentence Length and Greatest Severity were applied to Wilson upon his original classification by the BOP. Custody classifications are reviewed on an annual basis. As pointed out by the respondent, a male inmate with more than 20 years remaining to serve will be housed in at least a Medium security level institution, and one with more than 30 years to serve will be housed in a High security level institution, unless the PSF has been waived.[1] At the time Wilson was assigned to a federal prison, the PSF for Sentence Length was appropriate. In

---

[1] A request for waiver of a PSF can be submitted to the Designation and Sentence Computation Center ("DSSC") Administrator on a Form 409, and only the DSSC Administrator is authorized to waive a PSF. PS 5100.08, Ch. 5, p. 4.

addition, the offense severity scale indicates that a conviction for homicide warrants a PSF of Greatest Severity. *See* PS 5100.08, App. A, p. 1. Even if Wilson has a due process right to challenge his PSFs and the resulting classification, he has not shown that the assignments of PSFs for Sentence Length and Greatest Severity, resulting in a High security level assignment, were erroneously determined. Moreover, the attachments to Wilson's petition show that he has, in fact, been granted due process by filing an administrative remedy requesting that the PSF classification system not be applied to him. At each step of the administrative process, it was determined that Wilson's offense conduct warranted the application of Greatest Severity and Length of Sentence PSFs and that there was no basis to remove the PSFs at that time. Wilson has shown no violation of due process in the administrative remedies procedure.

Wilson has shown no error in the determination of his PSFs nor any other due process violation. No relief is warranted on this basis.

*Equal Protection Claim*

Wilson also argues that the Revitalization Act violated his right to equal protection. He contends that the Commission treats D.C. Code offenders less favorably than federal code offenders. He asserts that D.C. Code offenders receive two PSF scores while federal code offenders only receive one PSF score, in violation of the Equal Protection Clause. The respondent did not respond to this equal protection claim.

"It is well settled that the Equal Protection Clause protect[s] persons, not groups." *Engquist v. Oregon Dept. of Agriculture,* 553 U.S. 591, 597 (2008) (internal quotation omitted). "[T]he Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 910-11 (7th Cir. 2012)

(internal quotation omitted). The substantive test for an equal protection claim is whether "one is intentionally treated differently from others similarly situated." *Id.* at 914 (internal quotation omitted).

"Equal Protection claims are subject to different degrees of scrutiny depending on the individual rights or the class of persons at issue." *Council 31 of the American Federation of State, County, and Municipal Employees, AFL-CIO v. Quinn,* 680 F.3d 875, 886 (7th Cir. 2012). Prisoners are not a suspect class for equal protection purposes; "conviction of crime justifies the imposition of many burdens." *Johnson v. Daley,* 339 F.3d 582, 585-86 (7th Cir. 2003); *Pryor v. Brennan,* 914 F.2d 921, 923 (7th Cir. 1990) ("Prisoners do not constitute a suspect class."). Under these circumstances, the rational relationship test would apply, meaning that "the applicable government regulation will be upheld if there is a rational relationship between the disparity of treatment and *some* legitimate governmental purpose." *Council 31,* 680 F.3d at 886 (internal quotation omitted).

The Revitalization Act affected an entire class of persons, D.C. Code offenders. Those offenders by definition are not similarly situated to the federal code offenders. Wilson has made no showing that he was treated differently than any other similarly situated D.C. Code offender.[2] Therefore, his equal protection claim has no merit. *See Hunter v. United States Parole Commission,* 308 Fed.Appx. 856, 859 (5th Cir. 2009) (equal protection claim rejected where petitioner proffered no evidentiary basis for a finding that he was treated differently than other D.C. Code offenders because of some discriminatory intent); *Khaliq v. Angelone,* 72 Fed.Appx.

---

[2] Wilson asserts that "[f]ederal prisoner Bernie Madoff is a good example of the mistreatment received by these D.C. Code old law prisoners." Petitioner's Memorandum at p. 4. He alleges that "Bernie Madoff is serving 150 years, but because he is white he has not been subjected to housing in a penitentiary." *Id.* at p.5. Wilson's attempt to compare himself with Madoff lacks sufficient factual development and by admitting that Madoff was a federal offender, Wilson has not shown that he and Madoff were "similarly situated."

895, 899 (4th Cir. 2003) (discussing *Moss v. Clark,* 886 F.2d 686, 691 (4th Cir. 1989), which held that "District of Columbia prisoners [incarcerated in D.C. prisons] do not become similarly situated to prisoners in federal facilities with regard to parole eligibility simply because both were sentenced in the District of Columbia Superior Court under the District of Columbia Code."); *King v. United States Parole Commission,* No. 02-5207, 2002 WL 31520756, *1 (D.C. Cir. Nov. 13, 2002) (equal protection claim meritless because D.C. prisoner had not shown that he was similarly situated to anyone who received favorable treatment, and Commission has a legitimate reason for using degree of violence as a factor in its parole decisions); *Noble v. United States Parole Commission,* 194 F.3d 152, 154 (D.C. Cir. 1999) (D.C. prisoner confined in BOP was not similarly situated to D.C. offenders who were confined in D.C. prisons for equal protection purposes); *Smith v. LaManna*, 2007 WL 904282, *6 (D.C. prisoners not denied equal protection under the Revitalization Act); *Scott-El,* 2006 WL 2671399, *3 ("Since there are no facts showing that Petitioner was treated differently than any similarly situated D.C. offender, a viable equal protection claim has not been stated.").

Wilson has not shown that he has been treated differently than other similarly situated offenders. Therefore, his equal protection claim is meritless.

*Conclusion*

For the reasons given above, Wilson has failed to show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). He has failed to demonstrate that prison officials violated his constitutional rights in determining his classification status or parole eligibility.

Wilson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is therefore **denied**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 06/17/2013

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

John Wilson
Reg. No. 09408-007
Terre Haute USP
P.O. Box 33
Terre Haute, IN 47808

Electronically Registered Counsel